AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Eastern District of Virginia

JUL 2 4 2017

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No.  1:17-SW-442 |
| 3401 Audubon Avenue | ) |
| Alexandria, Virginia 22306 | ) |
| | ) **UNDER SEAL** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Eastern_____ District of _____Virginia_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1) and 846 | Conspiracy to distribute cocaine. |

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by SAUSA Lena
Munasifi

_____
*Applicant's signature*

Task Force Officer Justin Chung, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/24/17

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia

Honorable Theresa C. Buchanan
*Printed name and title*

## ATTACHMENT A

## **LOCATION TO BE SEARCHED**

The address known as 3401 AUDUBON AVENUE, ALEXANDRIA, VIRGINIA is a single level, single family trailer/dwelling. The dwelling is constructed of light gray siding accented with red shutters. The numbers '3401' are bronze in color and are affixed to an awning, located over a small landing/porch that serves as the entry way into the trailer/dwelling. The front door is red in color and the trailer/dwelling has a white screen door.

**ATTACHMENT B**

**LIST OF ITEMS AUTHORIZED TO BE SEARCHED-FOR**
**AND SEIZED PURSUANT TO FEDERAL SEARCH WARRANT**

3401 AUDUBON AVENUE, ALEXANDRIA, VIRGINIA

1.   Controlled substances, specifically including, but not limited to a) cocaine and b) residue of each/any particular illicit drug

2.   Items used in the sale, transfer, transportation, packaging and use of cocaine and/or other controlled substances, including scales, plastic wrap, plastic bags, tape, papers, pipes, written articles on the use and effects of narcotics, diluents and cutting agents.

3.   Items used in the manufacture or cooking of cocaine and/or other controlled substances, including precursor chemicals, chemistry guides, glassware and flasks.

4.   Documents related to or memorializing the ordering, purchasing, storage, transportation and sale of controlled substances, including U.S. currency used in the purchase and sale of controlled substances, buyer lists, seller lists, pay-owe sheets and records of sales, log books, drug ledgers, personal telephone/address books of customers and suppliers, rolodexes, telephone answering pads, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental records.

5.   Articles of personal property documenting or containing evidence of the existence of a conspiracy to possess and sell controlled substances, including personal telephone and address books, telephone bills, photographs and documents consisting of lists of names and or numbers, personal data assistants, computers, and computer storage media including hard disk drives, compact disks and zip disks.

6.   Articles of personal property evidencing or containing the evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of money and assets derived from or to be used in the sale of controlled substances, including books, receipts, records, bank statements and records, business records, money drafts, money orders, wire transfer receipts, and cashier's check receipts, passbooks, bank checks, safes, records of safety deposit boxes and storage lockers, personal data assistants, computers, and computer storage media including hard disk drives, compact disks and zip disks.

7.   Proceeds and articles of personal property which are the fruits, instrumentalities and evidence of trafficking in controlled substances, including U.S. currency, precious metals and stones, jewelry, negotiable instruments and financial instruments including stocks and bonds, which were obtained from the sale of controlled substances or proceeds therefrom.

8.   Photographs of participants and fruits and evidence of the trafficking of controlled substances.

9.     Weapons, firearms, ammunition and any booby-trap devices.

10.     Equipment used to detect police activities and surveillance, including radio scanners, wire transmitter detectors and closed circuit camera systems.

11.     Documents and articles of personal property showing or containing data showing the identity of persons occupying, possessing, residing in, owing, frequenting or controlling the premises to be searched or property therein, including keys, rental agreements and records, property acquisition records, utility and telephone bills and receipts, photographs, answering machine tape recordings, telephone beeper or pager devices, cellular telephones, wireless telephones, rolodexes, telephone answering pads, storage records, vehicle or vessel records, canceled mail envelopes, correspondence, opened or unopened, financial documents such as tax returns, bank records, safety deposit box records, canceled checks and other records of incomes and expenditures, credit card and bank records, personal data assistants, computers, and computer storage media including hard disk drives, compact disks and zip disks.

12.     Documents showing travel to and from source/distribution areas for narcotics and documents showing travel to and from consumer areas for narcotics including foreign and domestic passports.

13.     Waybills, air bills, bills of lading, receipts, delivery notices, and other shipping documentation from the U.S. Postal Service, small package carriers, or common carriers which indicate the shipment of packages and parcels containing controlled substances.

NOTE: Any wireless or cellular telephones shall be searched for the information set forth in this Attachment including recent calls, contact lists, stored text messages, emails, and any other stored files or data.

The search authorized by this Warrant for the subject property is of the entire premises, including all buildings, outbuildings, garages, yard areas, trash containers, storage areas and containers used in connection with or within the curtilage of the SUBJECT PREMISES.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

JUL 2 4 2017

IN THE MATTER OF THE SEARCH OF        )
                                      )    NO.  1:17-sw-442
3401 Audubon Avenue                   )
Alexandria, Virginia 22306            )    UNDER SEAL
                                      )

## AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT

I, Justin Chung, Task Force Officer of the Drug Enforcement Administration (DEA),

Washington Division Office (WDO), Washington, D.C., being duly sworn, depose and state the

following:

1.     I am "an investigative or law enforcement officer" of the United States within the

meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United

States who is empowered by law to conduct investigations of and to make arrests for offenses

enumerated in Section 2516 of Title 18, United States Code.  I am deputized under Title 21

authority by the DEA to investigate narcotic related offenses.  I have been a Law

Enforcement Officer with the Arlington County Police Department since December of 1997

and with the Organized Crime Section, Narcotics Enforcement Unit, Arlington County Police

Department for approximately five years.  I have been a task force officer with the DEA for

approximately two years.

2.     During my time in law enforcement, I have participated in the application for and

execution of numerous arrest and search warrants in the investigation of narcotics and

organized crime related offenses, resulting in the prosecution and conviction of numerous

individuals and the seizure of illegal drugs, drug proceeds in the form of bulk U.S. currency,

weapons, and other evidence of criminal activity. As a narcotics investigator, I have

1

interviewed many individuals involved in drug trafficking and have obtained information

from them regarding the acquisition, sale, importation, manufacture, and distribution of

controlled substances. Through my training and experience, I am familiar with the methods

used by traffickers of controlled substances and the nature and appearance of illegal

narcotics. I have received extensive training in drug identification, drug distribution

methods, and drug enforcement techniques from various federal, state, and local agencies,

including the Northern Virginia Criminal Justice Academy and the Virginia Department of

Criminal Justice.

3.      Based upon this experience, I have become knowledgeable of the methods and

modes of narcotics operations, and the language and patterns of drug abuse and trafficking.

During the course of my participation in investigations of narcotics trafficking organizations,

I have testified in trial, grand jury proceedings, and at preliminary and detention hearings.

Through my employment with the Arlington County Police Department and tenure with the

DEA as a task force officer, I have gained knowledge in the use of various investigative

techniques, including the utilization of wiretaps, physical surveillance, undercover agents,

confidential informants, cooperating witnesses, the controlled purchases of illegal narcotics,

electronic surveillance, consensually monitored recordings, investigative interviews,

financial investigations, the service of administrative and grand jury subpoenas, and the

execution of search and arrest warrants.

## **BACKGROUND**

4.  This affidavit is presented in support of an application for a warrant to search and

seize relevant evidence found in the following property located within the Eastern

2

District of Virginia: **3401 Audubon Avenue, Alexandria, Virginia 22306** (the "SUBJECT PREMISES"), as further described in Attachment A.

5.   This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by me or known to the government regarding the investigation.  I have set forth only those facts necessary to support probable cause.

6.   Law enforcement officers utilized two cooperating sources (hereinafter "CS-1" and "CS-2") during this investigation. The CS's information has been corroborated through various investigative techniques, to include analysis of telephone toll records and various surveillance techniques. Where possible, the information provided by the CSs has been corroborated.  To my knowledge, none of the information that the CSs has provided to law enforcement has proved to be false, misleading or inaccurate in any material respect.  For these reasons, I have deemed the CS's information to be reliable.

### FACTS ESTABLISHING PROBABLE CAUSE

7.   The DEA Washington Division Office (WDO) Annandale HIDTA Group 12 and the FBI Northern Virginia Resident Agency Group CR-7 initiated an investigation targeting a DTO involved in the transportation of cocaine to, and the distribution of cocaine in, northern Virginia.

8.   In late 2016, CS-1 was introduced to a Mexico-based narcotics source of supply (SOS) known only to CS-1 as "La Iguana," and later identified as VENEGAS.  CS-1 had numerous telephonic communications with La Iguana, who indicated he was part of a poly-drug trafficking organization (DTO) involved in the transportation and distribution of narcotics in Houston, Texas, Atlanta, Georgia, Chicago, Illinois,

3

South Carolina, and northern Virginia region. La Iguana indicated he was using an Atlanta-based courier, known by the alias "El VENADO," to transport cocaine from Atlanta to northern Virginia and provided the phone number for "El VENADO" to CS-1. In February 2017, after a series of telephonic conversations with "El VENADO," CS-1, under the direction and supervision of law enforcement, traveled to the Atlanta, Georgia area and met with "El VENADO." During the meeting, which was surveilled by law enforcement, "El VENADO" indicated he was primarily involved in the distribution of methamphetamine and marijuana. "El VENADO" also confirmed he had transported cocaine to a northern Virginia-based associate.

9.   During follow up conversations with CS-1, VENEGAS indicated the DTO had 50 kilograms of cocaine available for purchase in the Chicago, Illinois area and quoted CS-1 a price of $29,500 per kilogram. VENEGAS added his associate in Alexandria, Virginia, had kilogram quantities of cocaine available for purchase and quoted CS-1 a price of $33,000 per kilogram. VENEGAS facilitated contact between CS-1 and the Alexandria-based associate, later identified as Jose de Jesus REYES-Orozco (REYES), by providing CS-1 with REYES' phone number. CS-1 had various communications with REYES via voice and text message regarding a potential narcotics transaction. In late February 2017, at the direction of investigating agents, CS-1 advised REYES that he had a potential customer for him. This proposed customer is CS-2.

10.  In early March of 2017, CS-1 provided law enforcement agents with a contact number and information for REYES. In early March of 2017, CS-2 was provided

REYES' phone number by law enforcement. CS-2 contacted and arranged a meeting with REYES.

11. From March 2017 through July 2017 law enforcement conducted one controlled meeting where CS-2 obtained a sample of cocaine and five (5) controlled purchases from REYES with the assistance of CS-2.

## CONTROLLED INITIAL MEETING

12. On March 3, 2017, agents met CS-2 at a predetermined location in Alexandria, Virginia, within the Eastern District of Virginia. At the direction of law enforcement, CS-2 called REYES and established a time to meet at a restaurant. During the meeting, REYES quoted CS-2 a price of $1,250 U.S. currency (USC) per ounce of cocaine. At one point during the meeting, REYES went into the men's bathroom. When REYES returned, REYES provided CS-2 with a sample of cocaine concealed within a crumpled up paper receipt. REYES indicated he (REYES) could supply CS-2 with whatever CS-2 needed and stated that CS-2 comes "highly recommended." CS-2 returned to the staging area where CS-2 gave law enforcement the sample of cocaine that REYES had given him. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results indicated that the net weight contained approximately .58 grams of cocaine hydrochloride (HCL).

## CONTROLLED PURCHASE #1

13. In early March of 2017, law enforcement agents instructed CS-2 to facilitate the purchase of four (4) ounces of cocaine from REYES. CS-2 engaged in consensually recorded phone calls with REYES. CS-2 discussed the purchase of four (4) ounces

of cocaine for $5,000 USC.  CS-2 and REYES agreed to meet on March 9, 2017, at a

restaurant located in Alexandria, Virginia, within the Eastern District of Virginia to

complete the transaction.  On that day, CS-2 met with REYES, under law

enforcement monitoring, and was provided four (4) ounces of cocaine in exchange

for $5,000 USC. CS-2 met with law enforcement and turned over approximately four

ounces of suspected cocaine. The cocaine was submitted to the DEA Mid-Atlantic

Laboratory for testing, storage, and safekeeping.  The laboratory results indicated

that the net weight contained approximately 111.38 grams of cocaine hydrochloride

(HCL).

## CONTROLLED PURCHASE #2

14. On March 28, 2017, law enforcement agents instructed CS-2 to facilitate the

purchase of two (2) ounces of cocaine from REYES. CS-2 had a telephonic

conversation with REYES and negotiated the purchase of two ounces of cocaine for

$1,250 USC per ounce.  CS-2 advised REYES that CS-2 would meet him at a store

parking lot located in Alexandria, Virginia, within the Eastern District of Virginia.

On that day, CS-2 met with REYES, under law enforcement monitoring, and

purchased two (2) ounces of cocaine for $2,500 USC. CS-2 met with and gave law

enforcement approximately two ounces of suspected cocaine purchased from

REYES. A field test of the substance CS-2 obtained during the controlled purchase

was positive for the presence of cocaine. The cocaine was submitted to the DEA

Mid-Atlantic Laboratory for testing, storage, and safekeeping.  The laboratory

results are pending.

6

**CONTROLLED PURCHASE #3**

15. Again, in late April 2017, law enforcement agents instructed CS-2 to facilitate the purchase of two (2) ounces of cocaine from REYES. CS-2 had a telephonic conversation with MARTINEZ, a co-conspirator of REYES, and advised MARTINEZ that CS-2 would meet him at a store parking lot located in Alexandria, Virginia, within the Eastern District of Virginia. CS-2 met with MARTINEZ, under law enforcement monitoring, and purchased from MARTINEZ two ounces of suspected cocaine for $2,500 USC. CS-2 met with and gave law enforcement approximately two ounces of suspected cocaine purchased from MARTINEZ as facilitated and negotiated with REYES. A field test of the substance CS-2 obtained during the controlled purchase was positive for the presence of cocaine. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results are pending.

**CONTROLLED PURCHASE #4**

16. In late May 2017, law enforcement agents instructed CS-2 to facilitate the purchase of four (4) ounces of cocaine from REYES. On June 1, 2017, law enforcement agents met with CS-2 at a staging area and searched CS-2 and a UC vehicle for the presence of U.S. currency and contraband with negative results. CS-2 was provided with $5,000 USC and an audio recording and transmitting device. CS-2 had a telephonic conversation with REYES and advised REYES that CS-2 would meet him at a store parking lot located in Alexandria, Virginia, within the Eastern District of Virginia. Prior to meeting, surveillance units observed REYES arrive at the SUBJECT PREMISES. Law enforcement observed CS-2 depart the staging area in the UC

7

vehicle and maintained visual contact of CS-2 as he arrived at the meet location at a shopping center parking lot located on Richmond Highway in Alexandria, within the Eastern District of Virginia. Surveillance units observed REYES leave the SUBJECT PREMISES and arrive at the meet location driving a 2007 Nissan Altima. Surveillance units observed REYES exit the Nissan Altima and enter the UC vehicle with CS-2. CS-2 and REYES moved to a different area of the parking lot and conducted the drug transaction. After a short period of time, upon completion of the transaction, surveillance units observed REYES exit the UC vehicle, and walk into two nearby stores. Surveillance units tracked REYES' movements until he re-entered the Nissan Altima and departed the area. Surveillance units observed REYES return back to the SUBJECT PREMISES and observed REYES enter into the residence. CS-2 returned to the staging area where CS-2 gave law enforcement approximately four ounces of suspected cocaine. Law enforcement retrieved the audio recording and the transmitting device and searched CS-2 and the UC vehicle for U.S. currency and contraband with negative results. A field test of the substance CS-2 obtained during the controlled purchase was positive for the presence of cocaine. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results are pending.

## SEIZURE OF DRUG PROCEEDS

17. On or about June 23, 2017, during the monitoring of an active TIII intercept for TARGET TELEPHONE 1 being utilized by REYES, a call was intercepted between REYES and Auri Amabilia LOPEZ-MACHUCA (LOPEZ). REYES arranged a meeting involving the exchange of cash. A monitored and recorded conversation and

text between LOPEZ and REYES indicated that REYES would be meeting LOPEZ at a location in Arlington, Virginia located in the Eastern District of Virginia. Law Enforcement was able to monitor REYES' movements electronically through cell tower information. REYES was tracked leaving the vicinity of SUBJECT PREMISES based on cell tower information. Law enforcement responded to the area and was able to locate the meeting location and establish surveillance. Law enforcement observed and video recorded an exchange between LOPEZ and REYES. Law enforcement was able to corroborate the captured conversation between LOPEZ and REYES and observed a transfer of money from REYES to LOPEZ. Law enforcement conducted a traffic stop of a vehicle driven by LOPEZ who was the sole occupant. Law enforcement requested and was given consent to search LOPEZ'S vehicle. Upon searching the vehicle, law enforcement recovered approximately $13,000 U.S. currency divided into two bundles wrapped with rubber bands. Amongst the U.S. currency seized, law enforcement identified approximately $4,100 U.S. currency that had been recorded and provided to CS-2 as evidentiary funds for a cocaine transaction conducted with REYES on or about June 1, 2017. LOPEZ stated to law enforcement that her intention was to ship the currency to Mexico.

## CONTROLLED PURCHASE #5

18. In early July 2017, law enforcement agents instructed CS-2 to facilitate the purchase of one ounce of cocaine from REYES. On July 7, 2017, law enforcement agents met with CS-2 at a staging area and searched CS-2 for the presence of U.S. currency and contraband with negative results. CS-2 was provided with $1,300 USC and an audio recording and transmitting device. CS-2 had a telephonic conversation with REYES

and advised REYES that CS-2 would meet him at a store parking lot located in Alexandria, Virginia, within the Eastern District of Virginia. Prior to meeting, surveillance units observed REYES at the SUBJECT PREMISES. Law enforcement dropped CS-2 at the meet location at a shopping center parking lot located on Richmond Highway in Alexandria, Virginia. Surveillance units observed REYES leave the SUBJECT PREMISES and without any stops or pauses, arrive at the meet location driving a white Chrysler 300 sedan with Maryland registration 8CR3945. Surveillance units observed CS-2 enter the white Chrysler 300 sedan where CS-2 and REYES conducted the drug transaction. Upon completion of the transaction, surveillance units observed CS-2 exit REYES' vehicle, and walk into a nearby store. Surveillance units tracked REYES until he departed the area. Surveillance units observed REYES return back to the SUBJECT PREMISES and observed REYES enter into the residence. CS-2 returned to the staging area where CS-2 gave law enforcement approximately one ounce of suspected cocaine. Law enforcement retrieved the audio recording and the transmitting device and searched CS-2 for U.S. currency and contraband with negative results. A field test of the substance CS-2 obtained during the controlled purchase was positive for the presence of cocaine. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results are pending.

19. On May 26, 2017 and on July 6, 2017 the Honorable Liam O'Grady, United States District Judge, Eastern District of Virginia signed an Order authorizing the interception of wire and electronic communications of REYES. Historical and real-time cell tower information was provided with interception of wire and electronic

communications. Based on the location data provided, law enforcement has been able to check locations that REYES frequents. Law enforcement has been able to establish that the SUBJECT PREMISES is currently REYES' primary residence.

20. Based on my training and experience, I am aware that:

a.     Drug traffickers often place assets in names other than their own or corporate entities to avoid detection of these assets by government agencies. Even though these assets are in other persons names, drug dealers actually own and continue to use these assets and exercise dominion and control over them.

b.     Drug traffickers often maintain, on hand and in their residences, large amounts of United States currency in order to maintain and finance their on-going criminal activities.

c.     Drug traffickers commonly make and maintain business records. Specifically, it is quite common for those involved in the manufacture, sale, purchase, and transportation of controlled substances to generate and maintain writings, books, records, receipts, notes, ledgers, lists, airline tickets, money orders, package and shipping labels, and other memoranda to assist in their criminal activities. These materials are created and maintained in much the same way and for the same reasons as persons involved in legitimate businesses. The reason for this is that drug traffickers must maintain records in order to know the current status of the various illegal transactions in which they are involved. Since the activity is, by its very nature, clandestine and involves multiple complex financial transactions and the possibility of error and mistake is considerable due to the number, complexity and frequency of the various transactions without the aid of records.

11

d.     Drug traffickers commonly conceal contraband, including cocaine, and proceeds of drug sales, and records of drug transaction in secure locations within their residences and/or on their properties for their ready access and to conceal from law enforcement.

e.     Drug traffickers conceal in their residences drugs, currency, financial instructions, precious metals, jewelry, and other items of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging in narcotics trafficking activities.

f.     Drug traffickers often amass large proceeds from the sale of controlled substances and attempt to legitimize these profits, often utilizing domestic banks and their attendant services, securities, cashiers, checks, money draft and orders, letters of credit, brokerage houses, real estate, shell corporations and business fronts.

g.     Drug traffickers commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses and/or telephone numbers of their associates in drug trafficking.  They also store such information, as well as photographs, messages, and personal notes in electronic equipment including, but not limited to, computers, cellular phones and other electronic software and mediums.

h.     Drug traffickers often take or cause to be taken photographs and/or videotape of themselves, their associates, their property, and evidence of their drug trafficking.  These are usually maintained in their possessions and/or residences.

i.     Drug traffickers commonly utilized cellular phones and digital display

12

contact pagers as well as other communication devices, to keep in constant contact with their suppliers, associates, and clients in drug trafficking.

j.      Drug traffickers have been known to utilize computers and all electronic data processing units, to include all internal and external storage devices and related hardware and software that might include addresses or telephone numbers in computerized files which reflect names, addresses and/or telephone numbers of their associates in drug trafficking. They also utilize computers to maintain and electronically record receipts, notes, ledgers, owe sheets, financial information, money orders, and other papers relating the transportation, ordering, sale, and distribution of controlled substances. Drug traffickers have also been known to utilize computers as a communications device to keep in constant contact with their suppliers, associates, and clients in drug trafficking through the use of internet service providers and electronic mail systems.

k.      Drug traffickers often keep paraphernalia for packaging, cutting, weighing, and distributing narcotics, and these paraphernalia include, but are not limited to, scales, plastic bags, cutting agents, and other items used to package and store drugs so they can be distributed without being easily detected.

## CONCLUSION

21. Based on the information provided in this affidavit, probable cause exists to believe that evidence of narcotics trafficking in violation of Title 21, United States Code, Sections 841(a)(1) and 846, specifically those items set forth in Attachment B, are contained within the premises known as SUBJECT PREMISES, located at 3401

AUDUBON AVENUE, ALEXANDRIA,VIRGINIA further described in Attachment A.

22. Wherefore, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, I respectfully request a warrant to search the SUBJECT PREMISES.


Justin Chung
Task Force Officer
Drug Enforcement Administration


Sworn and subscribed to before me the 2\[?\] day of July 2017.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa C. Buchanan
United States Magistrate Judge

14

**ATTACHMENT A**

**LOCATION TO BE SEARCHED**

The address known as 3401 AUDUBON AVENUE, ALEXANDRIA, VIRGINIA is a single level,

single family trailer/dwelling.  The dwelling is constructed of light gray siding accented with red

shutters.  The numbers '3401' are bronze in color and are affixed to an awning, located over a

small landing/porch that serves as the entry way into the trailer/dwelling.  The front door is red in

color and the trailer/dwelling has a white screen door.

15

## ATTACHMENT B

## LIST OF ITEMS AUTHORIZED TO BE SEARCHED-FOR AND SEIZED PURSUANT TO FEDERAL SEARCH WARRANT

### 3401 AUDUBON AVENUE, ALEXANDRIA, VIRGINIA

1.  Controlled substances, specifically including, but not limited to a) cocaine and b) residue of each/any particular illicit drug

2.  Items used in the sale, transfer, transportation, packaging and use of cocaine and/or other controlled substances, including scales, plastic wrap, plastic bags, tape, papers, pipes, written articles on the use and effects of narcotics, diluents and cutting agents.

3.  Items used in the manufacture or cooking of cocaine and/or other controlled substances, including precursor chemicals, chemistry guides, glassware and flasks.

4.  Documents related to or memorializing the ordering, purchasing, storage, transportation and sale of controlled substances, including U.S. currency used in the purchase and sale of controlled substances, buyer lists, seller lists, pay-owe sheets and records of sales, log books, drug ledgers, personal telephone/address books of customers and suppliers, rolodexes, telephone answering pads, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental records.

5.  Articles of personal property documenting or containing evidence of the existence of a conspiracy to possess and sell controlled substances, including personal telephone and address books, telephone bills, photographs and documents consisting of lists of names and or numbers, personal data assistants, computers, and computer storage media including hard disk drives, compact disks and zip disks.

6.  Articles of personal property evidencing or containing the evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of money and assets derived from or to be used in the sale of controlled substances, including books, receipts, records, bank statements and records, business records, money drafts, money orders, wire transfer receipts, and cashier's check receipts, passbooks, bank checks, safes, records of safety deposit boxes and storage lockers, personal data assistants, computers, and computer storage media including hard disk drives, compact disks and zip disks.

7.  Proceeds and articles of personal property which are the fruits, instrumentalities and evidence of trafficking in controlled substances, including U.S. currency, precious metals and stones, jewelry, negotiable instruments and financial instruments including stocks and bonds, which were obtained from the sale of controlled substances or proceeds therefrom.

8.  Photographs of participants and fruits and evidence of the trafficking of controlled substances.

9.      Weapons, firearms, ammunition and any booby-trap devices.

10.     Equipment used to detect police activities and surveillance, including radio scanners, wire transmitter detectors and closed circuit camera systems.

11.     Documents and articles of personal property showing or containing data showing the identity of persons occupying, possessing, residing in, owing, frequenting or controlling the premises to be searched or property therein, including keys, rental agreements and records, property acquisition records, utility and telephone bills and receipts, photographs, answering machine tape recordings, telephone beeper or pager devices, cellular telephones, wireless telephones, rolodexes, telephone answering pads, storage records, vehicle or vessel records, canceled mail envelopes, correspondence, opened or unopened, financial documents such as tax returns, bank records, safety deposit box records, canceled checks and other records of incomes and expenditures, credit card and bank records, personal data assistants, computers, and computer storage media including hard disk drives, compact disks and zip disks.

12.     Documents showing travel to and from source/distribution areas for narcotics and documents showing travel to and from consumer areas for narcotics including foreign and domestic passports.

13.     Waybills, air bills, bills of lading, receipts, delivery notices, and other shipping documentation from the U.S. Postal Service, small package carriers, or common carriers which indicate the shipment of packages and parcels containing controlled substances.


        NOTE: Any wireless or cellular telephones shall be searched for the information set forth in this Attachment including recent calls, contact lists, stored text messages, emails, and any other stored files or data.

        The search authorized by this Warrant for the subject property is of the entire premises, including all buildings, outbuildings, garages, yard areas, trash containers, storage areas and containers used in connection with or within the curtilage of the SUBJECT PREMISES.

17